Morning. Morning. My name is Stephen Maceros. I'm here with Kevin Meyer. We represent Interstate Fire. Speak up a little. It's a very odd construct because there's cork on the walls of this room, and weirdly it absorbs all the sound. So if you could just speak a little louder, it would be helpful. Thank you. Thank you, Your Honor. The district court in this case misapplied Arizona law under Erie on three key issues, that being the efficient proximate cause doctrine, the assault and battery exclusion, as well as the burden of proof of a contractual indemnity claim. Maybe you could pull the microphone up closer to you. Thank you. I'll try to be louder. As a preliminary concept here, it's very important to understand that all of these claims arise out of sexual abuse of a minor by a diocese priest. There's no dispute that in every claim that the sexual abuse of the priest is both a factual and legal predicate for every claim. So with that, if you look at Arizona's efficient proximate cause doctrine, it states whether a policy covers a loss caused by excluded, which is the assault, as well as covered acts, negligent supervision, has been found by courts to turn on the proximate, efficient, dominant, or direct cause of the loss. If that cause is within the exclusion, the policy does not cover the loss. Thus, the efficient proximate cause doctrine can either contract or expand coverage depending on which cause, the covered cause or the non-covered cause, is the direct cause of the injury. So the Potomac case instructs the proper focus of inquiry then is on the proximate, direct cause of the loss. So in this case, it's very clear that the assault and battery exclusion clearly excludes the priest's assault on the minor child. That's undisputed. The case law that we have cited all agree and come to the same result that when you have a negligent supervision claim and you have an excluded act, then the, which is the direct cause, such as the assault here, then the negligent supervision claim being a derivative secondary claim is also not covered by the policy. Well, I guess you wouldn't be here if it was so clear to Judge Wake because he ruled against you, correct? Well, he did. And the reason he ruled against us is that he seized on some of the policies, the exclusions had a rising out of language in there. And by seizing on that, though, he violated the very essence of the efficient proximate cause document. Are you relying on the White case? Is that your focus on that? No. We're relying on the Aragona case, the Potomac case, the Barron's case, and the Lumberman's case. Let me just ask you this. If you are correct on the assault and battery, which goes back to Judge Smith's reference to the White case, if you're correct on that, does everything else fall? Yes. Do we have to go first to efficient proximate cause? No. So that's why I'm a little confused as to why you're starting with efficient proximate cause and not with assault and battery exclusion. Well, because we tried that in the trial court and he ruled against us on assault and battery and then efficient proximate cause. So if you don't have to reach the issue about the assault and battery if you accept and apply correctly the efficient proximate cause document. But if we start with the assault and battery exclusion, just hypothetically, if we agree with you that these events are excluded under that provision, then all the rest of the issues fall away, right? Yes. Okay. And you're also saying in your view if you start with the second issue, efficient proximate cause, that also could pull the thread on all the issues. Yes. Both efficient proximate cause and assault and battery are alternative ways of excluding all claims. They're case dispositive. And getting back to the arising out of language that he relied on. I'm sorry. Since we're sort of shifting gears a little bit here, my question is why would IFC add a sexual assault exclusion to a policy that according to IFC already excludes all liability for assault and battery? Well, that's the reason it was added was by the time it got to that point, the sexual abuse cases were just coming to light. And so it was added protection. The assault and battery exclusion, again, is, I'm sorry, the sexual abuse exclusion is actually broader than the assault and battery exclusion because even in these cases, some of the sexual abuse were not assault and battery or wouldn't fall within that because there was no physical contact. Some of the abuse was alleged to be showing the child pornography. The priest was masturbating in front of the child with no physical contact. Those are not excluded by the assault and battery exclusion. So the sexual abuse exclusion was determined to be added protection because, again, and I'll refer you back to Arizona public policy under the Transamerica Mayor case, is that Arizona's public policy forbids contracts indemnifying a person and insured for loss resulting from his own willful wrongdoing. And getting to the assault and battery exclusion, when any is, any insured is in an exclusion, it shows a contractual intent to prohibit recovery by innocent insurers. So what they're doing is they're trying to make it very clear, and sometimes insurance companies have to do this. Remember, these policies are written not just for a single individual. They're written to be sold nationwide, and the states interpret these policies differently. So Nevada may interpret the assault and battery exclusion differently than Arizona and California might. So sometimes they have to add these exclusions. I mean do the insurance company ask that this be added as a result of its observations of court decisions in other states or other circumstances involving the Catholic Church? Oh, sorry. Doing the same thing. Yeah, guilty. My question was, did the insurance company add the clause to which Judge Nelson referred as a result of having observed court decisions in other states, such as California, where rulings went against the insurance companies because of similar language that was not as expressed? Well, yes, I believe that is exactly the reason why you would do that. And, again, nobody has ‑‑ if you look at the definition of an occurrence, which is in the insuring clause, it automatically excludes any injury that's either expected or intended. Assault and battery is somewhat overlapping of that, but, again, based on insurance companies' provisions, you not only have to have a definition of an occurrence that says unexpected, you know, it must be unexpected or unintended, you have an assault and battery exclusion, and then you have an even broader sexual abuse exclusion, because when you're dealing with 50 states and all these different rulings coming down, and some are more conservative, some are very liberal, you have to sometimes say, no, we're not going to cover this, heck no, we're not going to cover this, and absolutely not, we're not going to cover this before some states will say, oh, I guess they don't intend to cover this. Isn't it one of the other differences is that the assault and battery exclusion doesn't relate to third parties, and as I read the sexual abuse exclusion, it's even broader that it could include claims vis‑a‑vis third parties. Correct. So they aren't ‑‑ it's not like a Venn diagram where they exactly overlap each other. Absolutely, yes, they do not overlap, and the assault and battery exclusion only applies to a situation where any insured, i.e., somebody insured under the policy controls the risk, which is against Arizona public policy, but it would cover an assault and battery by, say, a random parishioner who commits an assault that is not an insured under the policy, and the diocese might be liable for that. Well, if you go back to the White case, which seems to be the controlling case here, in the district court there was a focus in White's language on the arising out of, which isn't really the language here. Correct. So I think Judge Wake and I assume that the Catholic diocese would say, well, White doesn't really solve your issue. Could you really address for us why you think White is controlling and where, in your view, the district court misinterpreted the case? Well, okay. White and Brown, Brown is a very important case as well, which is the one that said that when any insured is in an exclusion, it shows a contractual intent to prohibit recovery by innocent insurers, and it came before White. Now, White didn't deal with the arising out of language at all. What those cases recognize is when they say any assured or insured, it applies to all insureds. It includes all. Now, the assault and battery exclusion here reads, this insurance does not apply to liability of any insured. Now, where the Court got off track, in our opinion, is he misinterpreted what does such refer to. It was undisputed and by any of the authorities cited, and we've cited cases from the Fourth, Fifth, and Tenth Circuits in our brief, such is merely a word of reference. It takes on the meaning of what it refers back to. It doesn't have a separate meaning in and of itself. I have trouble with that interpretation. It seems to be right on the face of it. Such assured doesn't apply to any. How do you make that connection? Well, if you read the authorities in the Pink Monkey case from the Fifth Circuit is the best authority, because it deals with how did the use of the word such in an insurance policy. It says here, and I'm quoting from the case, the personal profit exclusion does use the specific term such insured to indicate the same insured as previously referred to. When it states that the claim must arise from an insured having gained, in fact, any personal profit to which such insured was not legally entitled. So such insured only refers back to, I mean, that's what it means in the dictionary, it refers back to that just mentioned. And since the only insured just mentioned is any insured, that's the meaning it takes on, and that's what Pink Monkey recognized. Such insured means an insured, because that's the one that was just mentioned. If taking Judge Wake's ruling, what concerns me about it is it seems that by applying the exclusion separately to each insured, it in effect creates a severability clause in the contract, which is not there. And seems to be in violation of Arizona law. Is that your position? Yes, it is. And in fact, the Wake case says that when it says any insured, it applies to all insureds, even if there is a severability clause. And our policy or the Lloyds policy that we follow form did not have a severability clause. And nobody disputes that if such was taken out and said any, this, we wouldn't be here. I get that. But when you look at how such is used in the policies in these three cases that we cited, and it just refers back to the last mentioned, it in essence is and means any. Do you want to reserve your remaining time? I'm sorry? Yes, I do. May it please the Court, my name is Andy Jacob, and I have Mr. Naughton, who is the in-house counsel for the diocese, at the table with me. The first thing I'd like to bring to the attention of the Court is that all the discussion about why endorsement 4 was put into the policy is not in the record. And it's not in the record because it was not made part of the case until the very last day to file for summary judgment when we had a hard trial date about six weeks down the road. I can save the Court a lot of trouble trying to interpret the assault and battery clause by pointing the Court's attention to the White case. And the White case makes clear, and I believe I'll find it, I'm sure, when I sit down. The White case makes clear that when an insurance contract has language that's not clear to a layperson, that the contract provides the coverage that a reasonable person would expect to get. At the very least, when you need to go to White, though, for that proposition, that's pretty well a standard insurance clause. That's Arizona law, right. That's a standard insurance clause. And to make a complicated argument that takes pieces of cases and phrases and to try to give a tortured interpretation of this contract to exclude coverage is just contrary to how this is done. All the cases that exclude coverage categorically by cause state that. They make that clear. They use language like arising out of. There are usually cases that are property in insurance cases where you say we don't cover hurricane damage. The liability cases say things like we don't cover liability arising out of operation of a motor vehicle by the insurer. Well, you know what would help me is not to talk about all the things they could have written, but to talk about what they did right. So let's start with any insured. Right. What does any mean? What this means is if any insured commits or directs assault and battery. I'm asking what any insured means. It means just that. Anybody. It means if any insured commits assault and battery, liability of that insured, such means that in this context, is not covered. They're trying to say we're not saying that any liability arising out of sexual abuse isn't covered or assault and battery isn't covered, but we're not covering the liability of the person who did it. No. What they're saying, as I read this, is they don't need the arising out of language. If they had wanted to exclude all assault and battery, they could have said arising out of, but they didn't, right? Right. But what they are saying is that any insured, and that means anybody covered under the definition of assured, right? They're saying the liability of any insured. No. They're saying the liability of any insured. So that's any individual who might fall under the definition, right? Right. At the direction of such assured, meaning any assured. So in other words, you – if this was done at the direction of a third party or there were some other aspect, it wouldn't be covered, correct? They're saying an insured who would be liable is not covered if that insured committed or directed the assault and battery. They're not saying that the assault and battery is not covered if that insured  at that and was not at the direction of somebody who falls under the umbrella of assured, then there would be coverage, right? I don't think so. Why not? They're trying to say – I'm just asking you why wouldn't there – why would there not be coverage? Well, I – the at direction means if you do it or if you have someone do it as your proxy, they're trying to expand the actual doing of it. The at direction isn't really – doesn't really define the scope of whether everybody's covered or not. In other words, if I'm the person who commits the assault, I'm the priest, and I just do it myself, then I am the person who has committed that act, correct? Right. Okay. What if, in fact, I'm the priest who does it, but through a direction of someone else at the preschool or at the office or whatever, then then I also would be excluded from coverage, right? You already lose coverage because you did it. They're trying to expand it if you do it or if you direct someone to do it. Well, or if you direct someone. So you could either be the person who did it or you could be the person who directed it. Right. So you don't – you need to have both of those, right? No. But it couldn't be a third party that directed it. It could be either one. But if a third – Could it be a third party who's not an assured? It – then you go to who did it. If a third party directs a priest to do it, there's already not coverage of the priest because the priest did it. If the priest directs a third party to do it, there's not coverage because the priest directed that third party. But the question is, what is there not coverage of? There's not coverage of the insured who either does it or directs someone to do it. Right. And we don't contest that. We're not seeking coverage of the liability of the individual who did it. We're seeking coverage for the diocese for failing to supervise the individual who did it. So you're – you're doing – and in effect the – at the direction or failure to supervise, correct? Not at the – no one has said that the diocese directed the priest to do it. There's – these claims are that the diocese failed to adequately supervise the priest. They could either fail to supervise him to prevent him from directing someone else. They could fail to supervise him from doing it. Directing does take on meaning. Oh, yes, yes. It just doesn't affect whether all liability is excluded or not. They know how to write the language when they want to exclude all liability arising from assault and battery or sexual abuse. If – if you look at the language of brown and white. In other words, in a lot of insurance cases, California particularly has different insurance law than, you know, Arizona and sometimes Washington. So we have to look at state law. So I'm concerned about how we would be sidestepping state law if we took your position. But White says that if we categorically exclude a cause of liability, there's no coverage under any theory of liability. If we categorically exclude a cause of injury, the operation of a motor vehicle by an insured, that is categorically any liability arising from that kind of action is not covered. Whether you use the exact phrase arising out of or not, they're not magic words. They appear to be what insurance companies use. If they want to say you're not covered for any claims for sexual abuse, they can say that. If they want to say you're not covered for any claims of sexual abuse done by an insured, they can say that. What they did here is they used policy language that you can either say suggests or definitely means we're not covering the abuser. It doesn't say we're not covering any insured. We're saying any insured who does this, the liability of any insured is not covered. Ginsburg. My concern about that is you're reading in the word like anyone who does it, like any, and then like you put a little carrot in the contract. So you're reading in language, are you not? This is a difficult sentence. You tried to diagram this sentence like you learned in fifth grade. You have trouble with it. That's not our burden. That makes our case. If this sentence is hard to read, Judge Wake had a hard time. Judge Wake was ---- I don't have such a hard time reading it pretty clearly, but what I'm concerned about is that to read it your way requires me to insert language. To read it your way requires you to use language that you're more comfortable with because you're not comfortable with this language. I'm talking about the way you're reading it. You're saying it's like anyone or anyone who committed. And that's why I'm trying to ask you where do you get that interpretation? Because such refers back to that which you just referred to. And you're saying any insured at the beginning, but any can mean every. Or it can mean anyone. And in this case, it's talking about the liability. It doesn't say the liability of all insureds. It says the liability of any insured is not covered. If such insured, they're now referring to a single insured, that is, whose liability is at issue, if such insured committed or directed assault and battery. So ---- I think I understand your point. Thank you. I don't want the Court to lose sight of the fact that we have a cross appeal here. And our cross appeal is that the record here did not support a summary judgment on the Takata claim. What had to be shown in the Takata case is that the diocese did not have such a notice that Giandolo was going to molest again. That they should be charged with actually intending to have him molest again. This claim has to be viewed in the context of what was understood in the 1980s. Today, people, it's probably not true, but people have this notion that every sexual offender has an uncontrollable urge to offend again and will offend again. The record shows that science doesn't support that. The record also shows that the understanding that reasonably prudent people had in the 1980s was not that this was uncontrollable, compulsive behavior that's going to happen over and over again. What you're saying on that is if we get by the assault and battery and these others, that really is an issue that should go to trial. I believe that it should. You can't figure out as a matter of law. As a matter of law. We argued as a matter of law that the history that the diocese knew about Giandolo, the understanding that they should have had about recidivism, was such that it can't be said that they were certain he was going to offend a second time. Our position on appeal is that at a very least this evidence needs to go to a fact finder. There's only one reported decision where a court found that a church was so certain that a clergy member was going to molest again that they should be charged with intending that to occur. We made what I thought was a very cogent argument that you look at that case and that archdiocese had substantial knowledge that this priest was offending, engaged in misconduct, and only after they knew that he did it over and over and over again, victim after victim over a course of years, about approximately 18 months into the diocese acquiring this knowledge, did the court draw a line and say after that point you don't have any coverage. The Lutheran case shows that a church that knew a priest offended, sent him for a single day evaluation, put him back into the same position, having contact with the victim again, and he molested again, as much as that was stupid, reprehensible, wrong, something that no one would defend, they weren't charged with intending to have him continue to molest. They had insurance coverage. That's not to say that they did the right thing. Insurance is sold to spread the liability for being negligent, for being stupid, for being everything short than almost criminally negligent, where you knew this was going to happen and you still did it. In 1980, if we... You want to wrap up because you exceeded your time, but if you have a closing point... And the only thing I would ask for, if the court does agree and does remand this case to try the Toccata claim, that perhaps we give some guidance that the question should be in the 1980s was this so foreseeable, not is it today regarded that way. Thank you very much. Thank you. Do we have a short time for a rebuttal? Yes. I want to focus on the cross appeal. They want the standard to be intent, but the policy and the controlling case here is the Henderson case, the Supreme Court of Arizona. There's a difference between intended harm, which they want to use as the sole criteria, and expected harm, which is, as defined in the Henderson case, is substantial certainty. And substantial certainty is if something happens and you don't do anything to prevent it from happening again, and it does happen again, then the insurance carrier will pay the first one, but they're not going to pay for the second one. That's supported by the Winona case, where the archdiocese had very little knowledge of, well, in fact, the diocese actually withheld information from the archdiocese. They found out at the end of the first policy period of one incident. And so the court held that once they found out about the one incident, and they did an investigation, and I believe the report said that, well, we suspect there might be more, but we can't prove it. They said it doesn't matter. Once you had knowledge of the one, even though you found out a lot more later, you now are, it's an expected harm, and therefore the insurance company doesn't have to pay. In other words, you get one free bite at the apple. Once you're on notice, you do nothing about it, and the judge focused on that. They did nothing to rehabilitate Father Jan Leon other than transform around. And the bishop admitted he withheld information from the schools he was transferring them to when he entered into his plea bargain. So he knew exactly what he was doing. And Father Ladensack warned him, you're moving this guy around. He's abused this other kid, and you know it. You can't leave him out there. And, again, that priest was sanctioned by the bishop for reminding him not to transfer the abuser. Thank you. Thank you. Thanks for your argument and also for your briefing. In this case, the Interstate Fire v. Roman Catholic Church is submitted.
judges: Nelson, McKeown, Smith